MATTER OF MOY

Application for Classification as Refugee

A-11551885

*Decided by Regional Commissioner February 2, 1967*

Since an alien who had been firmly resettled in another country is ineligible for refugee classification under the proviso to section 203(a)(7) of the Immigration and Nationality Act, as amended, such classification is denied applicant. a native of China, who, after fleeing the mainland in 1949 thereafter had been firmly resettled in Colombia, South America, having acquired permanent residence and substantial assets in that country, including a partnership interest in a farm and cash savings amounting to $6,000 in a bank.

ON BEHALF OF APPLICANT: Samuel B. Waterman, Esquire
111 Broadway
New York, New York 10006

This matter is before the Regional Commissioner on certification of the decision of the District Director denying the application for refugee classification under the proviso to section 203(a)(7) of the Immigration and Nationality Act, as amended.

The applicant is a citizen of China, single, born September 12, 1932, in Toy Sun, Kwangtung, China. He fled from China to Hong Kong about 1949 because of his fear of persecution on account of political opinion. He states he is unwilling to return to China because he is opposed to Communism and the Communistic form of government. He remained in Hong Kong from about 1949 until May 26, 1956, during which time he was attending school and was supported by money received from his father who had remained on the Chinese Mainland. In 1956 the applicant went to Colombia, South America for employment. He was admitted to the United States on April 22, 1958, as a visitor for pleasure for four months. Thereafter he was granted a change of status to that of a nonimmigrant student with extensions of stay until January 30, 1963. He has since remained in the United States.

Upon his admission to the United States, the applicant presented a passport issued by the Republic of China valid to February 3, 1960, and a reentry permit for his return to Colombia to expire in January 1960.

117

His Chinese passport was revalidated until February 3, 1963, and his reentry permit for Colombia until March 1, 1961. When interviewed by an officer of this Service on September 11, 1958, the applicant stated he had resided in Colombia since May 1956; that he was engaged there in farming with a partner; that he and his partner owned land in Colombia; and that he had approximately $6,000 in a bank in Barranquilla, Colombia. In an application for an extension of stay submitted in October 1959, the applicant stated he had a yearly income of $2,700 from his personal savings in Colombia, South America.

Section 203(a)(7) of the Immigration and Nationality Act, as amended, reads as follows:

(7) Conditional entries shall next be made available by the Attorney General, pursuant to such regulations as he may prescribe and in a number not to exceed 6 per centum of the number specified in section 201(a)(ii), to aliens who satisfy an Immigration and Naturalization Service officer at an examination in any non-Communist or non-Communist-dominated country, (A) that (i) because of persecution or fear of persecution on account of race, religion, or political opinion they have fled (I) from any Communist or Communist-dominated country or area, or (II) from any country within the general area of the Middle East, and (ii) are unable or unwilling to return to such country or area on account of race, religion, or political opinion, and (iii) are not nationals of the countries or areas in which their application for conditional entry is made; or (B) that they are persons uprooted by catastrophic natural calamity as defined by the President who are unable to return to their usual place of abode. For the purpose of the foregoing the term "general area of the Middle East" means the area between and including (1) Libya on the west, (2) Turkey on the north, (3) Pakistan on the east, and (4) Saudi Arabia and Ethiopia on the south: PROVIDED, That immigrant visas in a number not exceeding one-half the number specified in this paragraph may be made available, in lieu of conditional entries of a like number, to such aliens who have been continuously physically present in the United States for a period of at least two years prior to application for adjustment of status.

We will concede for the purpose of this order that the applicant fled from Communist China because of fear of persecution on account of his political opinion and that he is unwilling to return thereto on account of political opinion. The issue to be decided here is whether by reason of having become resettled in a third country, Colombia, South America, he is ineligible for the requested refugee status. The statute does not specifically mention resettlement in another country after an alien has fled from his homeland. Reference will be made therefore to the legislative history of Public Law 89-236 which added section 203(a)(7) in its present form to the Immigration and Nationality Act. The Senate Committee on the Judiciary when considering H.R. 2580 (which became Public Law 89-236) states in its Report #748, p. 16:

As passed by the House, the bill in section 203(a)(7) provides that not to exceed 10,200 refugees from communism and an area of the Middle East may be granted conditional entries each year. As amended by the committee, this category of refugees is enlarged to include aliens who have been uprooted from their place of usual abode by a catastrophic natural calamity. It is the purpose of the committee in adding this group of persons to the refugee category to provide relief in those cases where aliens have been forced to flee their homes as a result of serious natural disasters, such as earthquakes, volcanic eruptions, tidal waves, and in any similar natural catastrophes. The Congress, in a prior case granted relief to such persons through the enactment of the Refugee Relief Act of 1953, where the term "refugee" was defined as follows:

Sec. 2.(a) "Refugee" means any person in a country or area which is neither Communist nor Communist-dominated who because of persecution, fear of persecution, natural calamity, or military operations is out of his usual place of abode and unable to return thereto, who has not been firmly resettled, and who is in urgent need of assistance for the essentials of life or for transportation.

Refugees have been admitted to the United States through the sponsorship of voluntary agencies and private citizens. The Committee anticipates that such practice will continue so that each refugee will have an opportunity to adjust and develop in this country without fear of abandonment and without the possibility of becoming a public charge.

The conditional entry of refugees as proposed in this bill is not unlike the parole procedure utilized during the existence of the so-called Fair Share Act (sec. 212(d)(5)) and it is intended that the procedures remain the same.

In House of Representatives Report #745, August 6, 1965, Page 15 the following statement appears:

The conditional entry of refugees as proposed in this bill is not unlike the parole procedure utilized during the existence of the so-called Fair Share Act (sec. 212(d)(5)) and it is intended that the procedure remain the same. Since the use of the term "parole" conveys a connotation unfavorable to the alien, the substitute term "conditional entry" has been used to avoid any such implication.

The so-called Fair Share Refuge Act (the act of July 14, 1960), with the exception of the sections which permit adjustment of status of refugees already admitted to the United States under its provisions, is repealed. The repeal of this legislation will again permit the United States to determine who is or who is not a refugee.

A further indication of the congressional intent is found in the following statement of Senator Edward M. Kennedy concerning H.R. 2580, which appears on page 23351 of the Congressional Record of September 17, 1965:

The plight of refugees has been of special concern to us since the end of World War II. Every outbreak of violence between nations leaves its toll in the homeless and dispossessed. Our concern for refugees was capped in 1960 by the passage of the fair share law, under which we agreed to accept up to 25 percent of persons displaced to other lands in a prior 6-month period, if these persons fell under the mandate of the United Nations High Commissioner for refugees. This law was passed in keeping with World Refugee Year. By placing refugees under our general immigration law for the first time, the bill before us will do away

with the main provisions of the fair share law, thus allowing the United States to make its own determination of who is or is not a refugee.

In the past we have accepted as refugees only those persons otherwise qualified who have not firmly resettled in another country. Those persons who after fleeing from their homeland have proceeded to another country where they have been accepted as permanent residents and have established themselves firmly can no longer be considered to be fleeing from persecution. The Congress obviously did not intend that the fact that an individual had fled from a country because of persecution or fear of persecution should without regard to intervening circumstances qualify him forever as a refugee.

The applicant, to quote from a brief submitted by his former counsel on October 23, 1958:

> .... established that at his domicile in Barranquilla, Colombia, he has a partnership interest in a farm valued at $1,500.00 and has cash savings amounting to $6,000.00 in a Barranquilla bank. He also established that he has no intention of abandoning his Colombia residence to which he is able to return (See permit to reenter Colombia which expires January, 1960).

We conclude that the applicant became firmly resettled in Colombia and that he does not qualify as a refugee within the scope of section 203(a)(7) of the Immigration and Nationality Act, as amended. The decision of the District Director will be affirmed.

*It is ordered* that the application for refugee classification under the proviso to section 203(a)(7) of the Immigration and Nationality Act, as amended, be and hereby is denied.